Good morning, Your Honors. My name is Nicole Leon. I'm arguing on behalf of the petitioner, Mr. Cesar Moriera, who is a native and citizen of Brazil. Mr. Moriera has applied for asylum relief and related remedies based on his fear of returning to Brazil. While he was living in Brazil, Mr. Moriera, who was at that time in Brazil a middle class small business owner, was subjected to persecution in relation to his business. On two separate occasions, he was violently attacked and abducted from his place of business, threatened with his life, and robbed at gunpoint. What is the social group? The social group is middle class small business owners in Brazil. And is there any precedent for finding that to be a social class? Well, Your Honor, not exactly on point. However, I would argue that business ownership is analogous to land ownership in that it's a possession of property, in a sense, and it also generates income. How do you distinguish this circuit's opinion in Okola v. Gonzalez, a 2005 case that held business owners do not constitute such a social group? Well, Your Honor, the way that I would distinguish that case is that that case was decided prior to this Court's recent case in Henriquez Rivas. And the basis for the Court's holding in that case is that the business owner group named in that case was not sufficiently, or was too broad, and encompassed too many different lifestyles, origins, viewpoints within one group, that it wasn't homogeneous. But since then, in Henriquez Rivas, this Court has invalidated that analysis in terms of determining whether a group is homogeneous. Why don't you tell us what about Henriquez Rivas would require us to, or justify us in remanding to the Board to consider the effect of Henriquez Rivas? Well, in this case, there's, in regard to social visibility and particularity, because the Board, in its decision, did not address whether this particular group is socially visible. Pardon me, please stand by. Well, in the Board's decision in this case, the Board did not go through the social visibility analysis. They found that the group was not cognizable on the basis that, in part, on the basis that it wasn't sufficiently particular and was too broad. But again, that is a consideration that has been since invalidated by Henriquez Rivas. If prior case law holds that business owners is too amorphous to constitute a group, and prior case law talks about wealth alone as being too amorphous, and here you've used the phrase middle class, how do we take these two amorphous concepts, put them together, and now have a recognized group? Well, in this, in Henriquez Rivas, this Court strongly suggested that a group, the social visibility of a group, can be evidenced by the persecutor's perception of this group as a definable group within the society. And in this case, there is evidence in the record that middle class, small business owners in Brazil were specific, or have been specifically targeted by persecutors. For example, in the record, there's a newspaper article that specifically states that at one point in the two-year period, small business owners or small businesses were subjected to something called quick nappings, which are violent abductions from the place of business, and that these had increased by 86% within a two-year period in the late 1990s, evidencing that this group is indeed viewed as a group by the persecutors. And in addition, there's also an article from the Washington Times, which reports that the middle class in Brazil and in Latin America in general is especially vulnerable to this form of persecution, given that they do have sufficient amount of wealth to be attractive to persecutors, but on the other hand, they don't have sufficient wealth to protect themselves with extreme security measures that the wealthy might be able to do. So, in light of the emphasis that has been placed on social visibility and the way that this court has interpreted what is the meaning of social visibility, in this way, this class is perhaps, or this particular group, can be analyzed in a different way than previous groups were, and to constitute, or for a finding that it does constitute a particular social group. Are you arguing Enriquez-Rivas now? Yes. You didn't before, until your J letter? When did you first argue Enriquez-Rivas? The J letter. Well, the briefing was completed in 2009, and I did submit a 28-J letter. When did you submit the 28-J letter? Yesterday. Why was that, I wonder? I'm sorry? Because Enriquez-Rivas has been out for a little bit. Right, I understand. A couple months, is my understanding. It would be more helpful in the future if when you became aware of the case, you submitted a letter. Actually, we often get letters that tell us there were cases decided in 1890 or 1920, which is not the purpose of an 8-J letter. Right. But this goes the other way. It's better if you give it some time. So if we were not aware of the case, which happens not to be the case here, if this were really something that we should consider that we haven't considered, it would not be very helpful to get it the day of or the day before the argument. That's right. But you're one of the lesser offenders. Yes, it's only two months, not 200 years. All right. Do you want to save two minutes, two and a half minutes? I'll reserve two minutes. Counsel, do you have a reserve sign on that chair? I'll give that to him later on. Did the Board address the social visibility analysis? Counsel says no. May it please the Court. Imran Zaidi again for the Respondent. No, it did not, Your Honor. But it didn't need to. It had two separate dispositive findings with regard to particular social group, both the fundamental characteristic and particularity. Again, this petition challenges asylum with holding and cat protection. The two grounds supporting the agency's denial here, first, Petitioner's proposed group, which is middle class small business owners in Brazil, lacks a fundamental characteristic and particularity. And second, Petitioner's failed to demonstrate that he faces a likelihood of torture in Brazil by or with the government's acquiescence. Now, at the outset, Your Honors, I'd like to note there's a little bit of confusion as to asylum here. The record shows that Petitioner himself argued what he called extraordinary circumstances in his brief before the immigration judge, but it was actually changed circumstances. I think the Board may have repeated that mistake or potentially not understood the argument. In any case, the Board called extraordinary circumstances what was, in fact, a changed circumstances argument. And that's, again, what Petitioner himself did. In any event, because there is a separate particular social group dispositive finding here, any error with regard to asylum is harmless. Turning first to the particular social group issue, and the first requirement here would be the fundamental characteristic. Maybe you could just answer really the only question is, why should or shouldn't the case be remanded so that the Board could consider the effect of Hernandez-Rivas? Enriquez-Rivas, Your Honor, here does not, would not affect, I believe at all, the first characteristic, the first reason for rejecting a particular social group, which is the fundamental characteristic. As to particularity, my counsel here has suggested that Ochoa v. Gonzalez, which Judge Zuhari mentioned in the argument, is no longer relevant. Now, again, Enriquez-Rivas was very specific in what it overturned. It said that to the extent that case law in this circuit has cited a diversity of lifestyles, interests, and political leanings, in the context of particularity, those principles have been overturned. But this Court, even subsequent to Enriquez-Rivas, has still recognized cases holding particularity, past particularity requirements and particularity findings, as long as they don't rely on that diversity of lifestyles language. Most recently, a month after Enriquez-Rivas, this Court, I believe in Escalante-Gimenez, a March 13th decision unpublished from this Court, it relied directly on Ochoa v. Gonzalez. Well, unpublished, then we can't consider. Your Honor, but it relied on Ochoa v. Gonzalez. So unpublished or not, it still demonstrates that it is still good law. The only aspect of it that is overturned is the aspect of relying on a diversity of interests undercutting a particularity argument rather than social visibility. Now, again, the first dispositive finding here with regard to a particular social group is fundamental characteristic. Now, Petitioners claim small business ownership is simply not a trait or characteristic so fundamental to one's identity or conscience that one should not be expected to change it. That is the standard that this Court is applying. I have an identical argument about land ownership. The law seems to be quite clear that it has been described as a fundamental characteristic, which you can't change. I'm not sure why that's true. Why can't you sell your land? You're a small business owner? You don't have to be a small business owner. Well, that's the argument we're making, Your Honor. Well, I know, but I'm not. The difference between being a landowner as being a fundamental characteristic and being the owner of a supermarket chain, why one's a fundamental characteristic and the other isn't, I have difficulty understanding. But that seems to be the law. Well, the law is a little bit unclear on this, Your Honor, but that's not actually it's not that that would be a fundamental characteristic. Land ownership was a past shared experience. That's what the Board held in Matter of Acosta. Well, we called it a fundamental characteristic. Well, perhaps under the umbrella of the fundamental characteristic analysis, but Matter of Acosta specifically said either something innate or a past shared experience, and that's what they refer to as land ownership. Here Petitioner himself is arguing that being a small business owner is so fundamental. This is Petitioner's argument, that it is so fundamental to his identity that he should not be expected to change it. And, Your Honor, that type of finding has been reserved by this Court and the Board to characteristics significantly more fundamental, things like sexual identity, as the Court held and her name is Montiel, or the failure to undergo or refusal to undergo genital mutilation or keeping your genitals. I understand those. My question was if you could explain why owning a business is different from owning land, so that one is a fundamental characteristic or a past shared experience and the other isn't. Is there a rational basis for that distinction? Well, no, I think, Your Honor, let me put it this way. If Matter of Acosta had said and described land ownership as being so fundamental and specifically said that's a characteristic that one should not have to change, then, yes, we would say no, we don't agree for the same principles that we're citing here. What is it about land ownership that distinguishes it from the ownership of General Motors? I don't believe there is very much, Your Honors. I think, again, Your Honor, I believe it is that they cite it as a past choice or something that somebody has done in the past. Similarly here, if the Court were to say, well, you were a small business owner at some point or you had done something else at some point, that might be a shared past experience. But, again, Petitioner's own argument here is that it's a fundamental characteristic and that's simply not supported by the record. And Matter of Acosta actually addresses the claim that she's making because saying small business ownership is fundamental is very much like what Matter of Acosta already dismissed, taxi drivers. It's simply a type of job. I'm not suggesting that that is not the law. I was asking whether you could explain the reason to me. No, I understand, Your Honor. And there is some confusion as to what's a fundamental characteristic and then a voluntary associationship and then a past shared experience. But in this case, we're saying that Petitioner herself has argued that it's a fundamental characteristic and we don't believe that it is. If I can ask you a couple of questions. Sure. One, isn't this situation, Mr. Moriah, similar to the people who fear gangsters? I mean, he was sexually – I'm sorry. He was assaulted, seriously assaulted, robbed, threatened three – at least three different times. It just seems like maybe in light of Intrigue Es Rivas, he might be able to fit the category. Do you acknowledge that the facts are similar to those that the court has acknowledged or those who fear gangsters? When you say the facts, you say it's similar to Intrigue Es Rivas in particular or any other? No. I mean, just Intrigue Es Rivas or some of the other cases where I think this Court has said they show enough particular fear of the gangster groups. Wow. Your Honor, I think in this case there's much less evidence in support of that because it's not even clear who was targeting them. I mean, in this case, unlike cases, you know, matter of SEG and Ramos v. Lopez or even Intrigue Es Rivas, setting aside the testifying against them component, you are talking about gangs. Here we're completely unaware. We have three different encounters where masked individuals came and took him from his restaurant or, you know, took him to an ATM to get money. It's completely unclear who. But you don't think that bolsters the social visibility? No, Your Honor. In fact, we think that it falls then directly under the matter of SEG and Ramos v. Lopez, which is the general civil strife. If it affects everybody, it's not enough to distinguish this group, which he proposes as middle-class small business owners. Well, if this is happening to everybody. Correct. If it is happening to everybody. If it's happening to everybody. That's interesting. Let me ask you, in ruling on an application for cat relief, it looks like the BIA must address the probative evidence in the record. That's our case law. And I'm just curious, do you think the BIA's explanation in this case, that the record demonstrated Moriah failed to meet his cat burden, was sufficient? I do, Your Honors. And I think that's for both. Both components of cat we do think are wanting here. You know, first is whether or not there's a likelihood of future torture. So the harm itself. And the Court will first look as a principal factor to past torture. You know, Petitioner himself has not described, again, his experiences were unfortunate to be sure. But he himself has not described, I don't believe, his experiences as past torture. And that's the first factor the Court will look to. That's just harm, though. The other question, again, is government acquiescence in the harm. Because he does not claim that this harm or harming fears in the future would be by the government. So it must be acquiescence that he needs to demonstrate. And, again, this Court has a strict standard for acquiescence. The regulation requires awareness of torture. And then a subsequent decision or failure to intervene to prevent it. And as this Court interpreted that in Zhang, it said willful blindness to torture. I'm just curious if that conclusory statement is sufficient to address it. Because the case law is pretty clear that BIA has to address it. Has to address cat separately. Yes. Well, Your Honor, this Court regularly upholds board decisions that say somebody has not demonstrated likelihood of future persecution by or with the government acquiescence. With we submit much more evidence than is submitted here. But where there's probative evidence about country condition, I think we normally require them to analyze it. And I don't see that they analyzed it here. Your Honor, again, we submit that the board regularly does use language like this in saying both the failure to demonstrate likelihood of torture and acquiescence. And it's true that in this case the board did not go beyond that. It didn't cite any country evidence in particular. But, again, we submit that the government, the board, doesn't need to in every case cite country conditions evidence or specifically address one of Petitioner's claims. Particularly where, as here, Petitioner himself does not claim that he was tortured in the past and has presented no evidence, no evidence specific to him, and even the generalized evidence that the government would be willfully blind to any future torture. Well, you make a beautiful statement there. And if the BIA had done that, I think, you know, that would have been analyzing it. But they didn't do that. Your Honors, I do believe that by simply saying, by reciting the standard and saying that Petitioner failed to meet it, the board has met the same duty that this court has said that it has met several times before. It would have been nice if they had said something more. But let me see if I understand your position correctly. And that is, if you look at this additional evidence of country conditions, there's nothing that suggests that in this particular case, or maybe even generally, that there was government acquiescence in what happened to this Petitioner. That's correct, Your Honor. And it's not just suggest. It compels the conclusion on this Court's review. And, Your Honors, I haven't addressed particularity here. I think particularity here is very directly addressed by Achilla v. Gonzalez, which had both business owners who refused to participate in drug trafficking. Here you've got business owners who are in the middle class. I think you'll be very hard-pressed to make an argument that middle class is somehow more particular than people who refuse to participate in drug trafficking. It instead falls directly under matter of AME's warning against amorphous benchmarks and groups that are simply too subjective, inchoate, or variable. That's directly what the middle class represents here. And I recognize that Petitioner has done his very best to try to demonstrate that the middle class in Brazil is somehow shrinking. But, Your Honors, you're still talking about, by her own evidence, a group that is 35 to 45 percent of a country of 200 million people.  And a group that large simply cuts too large a swath of society. Thank you. A couple of points, Your Honors. Mr. Moneda argues that this case is appropriate for remand and should be remanded to the Board of Immigration Appeals for the Board to correct its errors in regard to the changed circumstances argument which it did not address. Also, its mischaracterization of the Petitioner's proposed social group by adding an element of harm that the Board added and then invalidated the group on the basis of the mischaracterization, which is also a reversible error. In addition, it should be remanded in light of this Court's recent holding in Henriquez-Rivas because social visibility has been possibly redefined by that decision. And in this case, the Board did not even address social visibility. And also, the Board, in part, struck down the social group on the basis of it being too broad, which is not a valid reason anymore to strike down a social group on the basis of Henriquez-Rivas and also this Court's holding in Perdomo v. Holder, which held that a group cannot be invalidated simply because of its size or potential size.  Perhaps, but it is not the – it can't be struck down just for that sole reason. Thank you. Thank you, Counselor. The case discharges will be submitted.
judges: Zouhary, Reinhardt, Murguia